UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GUADALUPE VILLA CAMBRON,<br>Petitioner,<br>v.<br>J. JOHNSON, et al.,<br>Respondents. | Case No. 5:26-cv-04624-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

William Guadalupe Villa Cambron ("Petitioner") filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The Court grants the Petition and orders Petitioner's immediate release from custody.

Respondents' Answer largely fails to respond to Petitioner's claims. The facts and law set forth in the Petition establish that Petitioner is entitled to relief on Grounds 2, 3, and 4, because ICE officers illegally arrested Petitioner without a warrant and

violated Petitioner's due process rights by failing to provide him with a pre-detention hearing. The other grounds in the Petition are dismissed as moot or unripe.

## II. PROCEDURAL HISTORY

Petitioner filed the present Petition on August 13, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: Petitioner's detention violates his Fifth Amendment substantive due process rights. (Pet. at 21-22.) Respondents "lack a legitimate, non-punitive justification" for detaining him, because he "does not pose a danger to the community and is not a[] flight risk." (Pet. at 21-22.)

Ground 2: Petitioner's detention violates his Fifth Amendment procedural due process rights, because he was arrested "without a warrant or notice and a meaningful opportunity to be heard…." (Pet. at 22-23.)

Ground 3: Petitioner's arrest violated 8 U.S.C. § 1357(a)(2) and the Fourth Amendment because ICE officers did not have an arrest warrant or a reasonable belief that he was likely to escape before one could be obtained. (Pet. at 24-26.)

Ground 4: Respondents "violat[ed] Immigration and Nationality Act ("INA") procedures" because they did not "conduct a flight risk assessment" before arresting Petitioner, and "the facts support that Petitioner was in fact not a flight risk." (Pet. at 26-29.)

Ground 5: Respondents violated the Administrative Procedures Act ("APA") by arresting and detaining him unlawfully. (Pet. at 29-30.)

Ground 6: Because "[t]he government is carrying out deportations to third countries without providing sufficient notice and opportunity to be heard," there is "a substantial risk that Petitioner could be removed to a country other than Mexico without adequate notice or an opportunity to challenge such removal." (Pet. at 31-32.)

The Petition seeks Petitioner's immediate release from custody or,

alternatively, a bond hearing. (Pet. at 34-35.) The Petition also asks the Court to "[e]njoin Respondents from removing him to any country other than Mexico, unless the Respondents first provide all procedural protections required by the Constitution, federal law, and applicable precedent, including the protections discussed in … D.V.D. v. U.S. Department of Homeland Security., No. CV 25-10676-BEM 2025 WL 1453640 (D. Mass. May 21, 2025)." (Pet. at 34-35.)

On August 17, 2026, the undersigned issued a Standing Order for § 2241 Immigration Petitions, which stated in relevant part, "**Failing to file an answer by the due date−or filing an answer that fails to substantively respond to any claim in the petition−may result in the Court granting the petition or claim as unopposed.**" (Dkt. 6 at 1-2) (emphasis in original).

On August 20, 2026, Respondents answered the Petition. ("Answer" at Dkt. 8.) The Answer argues, "Petitioner is properly detained pending such potential bond proceedings because this is the Petitioner's first detention; they were not previously released from immigration detention or paroled." (Id. at 2.) The Answer admits, "The Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026) ("Bostock") (finding "that [noncitizens[1]] present without admission who are apprehended in the interior of the United States are subject to the detention regime of [8 U.S.C.] § 1226, not § 1225(b)(2)(A)")." (Id. at 2.) However, the Answer argues, "[T]o the extent the instant Petitioner has not yet requested such a bond hearing from the Immigration Court, the Petitioner has

[1] This R&R generally uses the term noncitizen rather than alien. See Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' … while the word noncitizen, which is synonymous … avoids such connotations. Thus, noncitizen seems the better choice.").

not yet properly exhausted their available administrative remedies, and their Petition is defective on that basis." (Id. at 2.) The Answer does not state whether Petitioner has requested such a bond hearing, allege any other facts, or contest any of the facts alleged in the Petition.

## III. FACTUAL RECORD

### A. Arrival and Life in the U.S.

Petitioner is a 26-year-old citizen of Mexico who has resided in the U.S. for more than 20 years, since 2005. (Pet. at 8, ¶ 28.) He was brought to the U.S. by his parents when he was 5 years old; his "whole upbringing has been in the United States" and he "has no family or meaningful support system outside the United States." (Pet. at 8, ¶ 29.) He has two U.S.-citizen siblings who were born in the U.S. (Pet. at 8, ¶ 30.) Since his arrival, he has continuously resided in the U.S. (Pet. at 8, ¶ 30.) He owns a landscaping business, which employs both him and his father. (Pet. at 8, ¶ 31.) Before his current detention began, he had never been detained by ICE. (Pet. at 8, ¶ 27.)

### B. Deferred Action for Childhood Arrivals ("DACA") Status.

Petitioner was previously granted legal status to remain in the U.S. under the DACA program. (Pet. at 8, ¶ 32.) His status was set to expire on March 24, 2026. (Pet. Ex. A / Dkt. 1 at 43 (application requesting DACA renewal, dated November 17, 2025).) On November 17, 2025, he applied to the U.S. Citizenship and Immigration Services ("USCIS") to renew his DACA status. (Id. at 43-44; see also Pet. at 8, ¶ 32.)

On April 3, 2026, USCIS sent him a letter asking for additional evidence about an arrest. (Pet. Ex. A / Dkt. 1 at 40.) The letter stated, "A background check has been conducted based upon the fingerprints you provided" and "revealed that you were arrested on July 27, 2024, in Riverside, California, and charged with Kidnapping and Inflict[ing] Corporal Injury on Spouse/Cohab[itant]." (Id. at 41.) The letter directed Petitioner to "provide a full explanation of the circumstances of

your arrest, a certified court disposition which lists the final judgment and sentence for each arrest disposed, as well as all police reports, incident reports, arrest records, charging documents, sentencing records, etc. …" (Id.) It is unclear whether Petitioner was charged with a criminal offense based on this arrest. The Petition states that he has no criminal convictions. (Pet. at 8, ¶ 34.) The letter from USCIS instructed Petitioner to respond by June 29, 2026. (Pet. Ex. A / Dkt. 1 at 40.)

**C. Arrest by ICE.**

Before the deadline to respond to USCIS had expired, Petitioner was arrested by ICE. On May 15, 2026, three unmarked vehicles followed Petitioner's car as he was driving to work. (Pet. at 7, ¶ 26; id. at 27-28, ¶ 102.) One car "trail[ed] [Petitioner] close to the bumper of [his] car," and another "sped up and cut [Petitioner] off to place himself in front of [Petitioner's] car so [the officer could] slow [Petitioner] down." (Id. at 28, ¶ 102.) Uniformed ICE agents stepped out of their vehicles. (Id.) One "approached [Petitioner's] driver's side," and Petitioner "put [his] window down." (Id.) The officer asked Petitioner where he was going and, when Petitioner took too long to respond, "grabbed [Petitioner's] arm and yanked [him] out of [his] car … to put [him] in cuffs…." (Id.) The officer then asked Petitioner's name. (Id.) Petitioner gave his name and asked why he was being arrested; the officer did not answer. (Id.) Petitioner was patted down and placed in the back of one of the ICE vehicles, while another officer searched his car and then "parked it … by a fire hydrant." (Id.)

The officers did not serve Petitioner with an arrest warrant or written notice of why he was being detained, and they did not give him an opportunity to contest the reasons for his arrest. (Id. at 7, ¶ 26; id. at 9, ¶ 35.)

After his arrest, Petitioner was not given a bond hearing. (Pet. at 9, ¶ 36.) Based on Respondents' Answer, it appears that DHS deemed Petitioner ineligible for a bond hearing as an "applicant for admission" under 8 U.S.C. § 1225(b)(2).

(See Answer at 2 (admitting Petitioner is now entitled to a bond hearing under Bostock).)

DHS began removal proceedings against Petitioner shortly after his arrest by ICE. His removal case remains pending, and he has not been ordered removed. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 214-148-268 (Mexico), last accessed Aug. 24, 2026).)

Petitioner remains in ICE custody in Adelanto, California. ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 214-148-268 (Mexico), last accessed Aug. 24, 2026).)

## IV. DISCUSSION

### A. Petitioner is Entitled to Relief on Grounds 3 and 4, His Illegal Arrest Claims.

#### 1. The Parties' Arguments.

In Ground 3, Petitioner argues that his arrest violated 8 U.S.C. § 1357(a)(2) and the Fourth Amendment because ICE officers did not have an arrest warrant or a reasonable belief that he was likely to escape before one could be obtained. (Pet. at 24-26.) In Ground 4, Petitioner argues Respondents "violat[ed] [INA] procedures" because they did not "conduct a flight risk assessment" before arresting Petitioner, and "the facts support that Petitioner was in fact not a flight risk." (Pet. at 26-29.) Respondents' Answer fails to respond to these claims.

#### 2. Legal Standard.

Because generally "it is not a crime for a removable [noncitizen] to remain present in the United States," then "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." Arizona v. United States, 567 U.S. 387, 407 (2012). "The federal statutory structure instructs when it is appropriate to arrest [a noncitizen] during the removal process." Id.

The INA provides, "On a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). "If no federal warrant has been issued, [federal immigration] officers have more limited authority" to arrest noncitizens under 8 U.S.C. § 1357(a). Arizona, 567 U.S. at 407. An immigration officer may arrest a noncitizen if the officer "has reason to believe that the [noncitizen] … is in the United States in violation of … law or regulation and is likely to escape before warrant can be obtained for his arrest…." 8 U.S.C. § 1357(a)(2); see also 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

Thus, "a warrantless arrest requires an individualized assessment of the person's flight risk." United Farm Workers v. Noem, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025) (granting provisional class certification and preliminary injunction because "the evidence shows a pattern and practice of warrantless arrests without Border Patrol agents performing individualized flight risk assessments to have probable cause for the arrest as required"). "The phrase 'has reason to believe' has been equated with the constitutional requirement of probable cause." Tejeda-Mata v. Immigr. & Naturalization Serv., 626 F.2d 721, 725 (9th Cir. 1980) (finding sufficient basis for noncitizen's warrantless arrest where, inter alia, the officer "recognized" him as someone "whom he had previously arrested and who had been granted voluntary departure from the United States approximately three weeks earlier").

**3. Analysis.**

Petitioner alleges that ICE officers failed to serve him with an arrest warrant when they arrested him on May 15, 2026. The facts alleged in the Petition also do not indicate that ICE officers had probable cause to believe Petitioner is a flight risk. He alleges that he has resided in the U.S. for more than 20 years (since the

age of 5), has no criminal convictions, owns a business, and has a pending application to review his protected status under the DACA program. When ICE arrested him, he did not attempt to flee or resist arrest. Respondents' Answer does not dispute these factual allegations and fails to respond to this claim.

Accordingly, the Court grants relief on this claim and orders release from custody. See, e.g., Mora Yanez v. Johnson, No. 26-cv-03518-SRM-ACCV, 2026 WL 2121260, at *2, 2026 U.S. Dist. LEXIS 164301 (C.D. Cal. July 16, 2026); Urias v. Semaia, No. 26-cv-02753-DTB, 2026 WL 1710375, at *6, 2026 U.S. Dist. LEXIS 129442 (C.D. Cal. June 10, 2026); Marin v. Noem, No. 25-cv-09343-cv-SSC, 2025 WL 3158094, at *3, 2025 U.S. Dist. LEXIS 197764 (C.D. Cal. Oct. 4, 2025).[2]

**B. Petitioner is Entitled to Relief on Ground 2, His Due Process Claim.**

**1. The Parties' Arguments.**

In Ground 2, Petitioner argues that his detention violates his Fifth Amendment procedural due process rights, because he was arrested "without a warrant or notice and a meaningful opportunity to be heard…." (Pet. at 22-23.)

---

[2] The Court respectfully disagrees with some recent district court decisions finding that an improper warrantless arrest by immigration authorities does not justify release from custody. See, e.g., Jacinto Chacon v. Mullin, No. 26-cv-03294-RAO, 2026 WL 2127177, at *3 (C.D. Cal. July 21, 2026). Those cases cite language from U.S. ex rel. Bilokumsky v. Tod, 263 U.S. 149 (1923), where the petitioner was challenging the validity of a deportation order based on an allegedly illegal arrest. It is questionable whether many aspects of this case remain good law. See generally F.R.P. v. Wamsley, No. 25-cv-01917-AN, 2026 WL 482184, at *3, n.1, 2026 U.S. Dist. LEXIS 33812 (D. Or. Feb. 19, 2026) (discussing major changes in immigration law since Bilokumsky was decided). Regardless, the present case is distinguishable because Petitioner is not challenging a removal order but rather the legality of his detention during removal proceedings. A lack of statutory authority for his warrantless arrest renders that detention illegal and justifies release from custody.

Respondents' Answer does not directly respond to this claim. This claim is not mooted by the Court's grant of relief on Grounds 3 and 4 because, as discussed further below, prospective injunctive relief is appropriate in addition to release from custody.

**2. Legal Standard.**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**3. Analysis.**

a. Liberty Interest and Private Interest Affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause

protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Respondents' Answer appears to argue that Petitioner does not have a legally cognizable liberty interest in release from custody because "this is the Petitioner's first detention; they were not previously released from immigration detention or paroled." (Answer at 2.) This appears to be an attempt to distinguish cases finding that, once a noncitizen is released on parole, this creates a liberty interest in release. See, e.g., Pinchi, 792 F. Supp. 3d at 1032-33; Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); Omer G. G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025).

However, district courts have also "'overwhelmingly found' that a noncitizen with active deferred action status [under DACA] has a protected liberty interest under the Due Process Clause." Hernandez v. Warden, Golden State Annex Det. Facility, No. 26-cv-3727, 2026 WL 1759597, at *2 (E.D. Cal. June 18, 2026) (collecting cases), R&R adopted in part, rejected in part, 2026 WL 2099232 (E.D. Cal. July 21, 2026) (adopting Magistrate Judge's reasoning but finding that release from custody, rather than the recommended bond hearing, was the appropriate remedy); see also Reyes Servin v. Semaia, No. 5:26-cv-02745-MAR, 2026 WL 1670852, at *3 (C.D. Cal. June 4, 2026) (collecting cases and noting that the "Ninth Circuit has described deferred action as a 'form of parole' and 'stay[ ] of removal.'") (quoting Lee v. Holder, 599 F.3d 973, 975 (9th Cir. 2010)); Anderson v. Chernut, No. 26-cv-01960, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (reasoning that the "government's knowing decision not to detain an individual creates a liberty interest in their continued release").

Even where a noncitizen's DACA status has expired, their liberty interest

does not necessarily expire as well. Hernandez, 2026 WL 1759597, at *3 (finding that the "expiration of petitioner DACA status does not eliminate his vested protected liberty interest," where the government had not "terminated" his status; relying on "petitioner's past DACA approval, including deferred action and employment authorization during which petitioner formed enduring attachments of normal life"). Here, Petitioner timely applied to renew his DACA status before it expired, and there is no evidence that his application has been denied. USCIS requested additional information from Petitioner about an alleged criminal arrest, and ICE detained Petitioner before his deadline to respond to that request expired. Cf. Rodriguez Morales v. Warden, No. 26-cv-04203-SB-ADS, 2026 WL 2365058, at *2 (C.D. Cal. Aug. 14, 2026) (noting that "DACA's implementing regulations … require USCIS to provide a Notice of Intent to Terminate and an opportunity to respond prior to terminating a grant of deferred action.") (citing 8 C.F.R. § 236.23(d)(1)).

Petitioner's twenty years of residence in the U.S., as well as his familial and financial connections here, further support a finding that he has a protected interest in remaining free from immigration custody. See, e.g., Salas v. Warden, No. 26-cv-03260-SRM-ACCV, 2026 WL 2365083, at *2 (C.D. Cal. Aug. 14, 2026) ("Petitioner's thirty years residence in the state of California, his [DACA] status for three grants of DACA, and his extensive connections in southern California establish that he has a liberty interest recognized and protected under the Fifth Amendment Due Process Clause.").

Accordingly, Petitioner has a constitutionally protected liberty interest in remaining free from immigration custody.

b. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine

whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94). Respondents have never explained—at the time of Petitioner's arrest, during a post-arrest bond hearing, or even in the present proceedings—what factual basis ICE has (if any) for determining that Petitioner is a flight risk or a danger to the community. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

c. Countervailing Government Interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention by ICE.

d. Appropriate Remedy is Release and Prospective Injunctive Relief, Not Post-Deprivation Hearing.

Respondents argue that, to the extent Petitioner is entitled to any relief on the Petition, the appropriate remedy is a bond hearing rather than release from

custody. (Answer at 2-3.) The Court disagrees.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. See, e.g., Gudavasov, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484 (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

**C. Grounds 1 and 5 Is Dismissed as Moot.**

In Ground 1, Petitioner argues that his detention violates his Fifth

Amendment substantive due process rights, because Respondents "lack a legitimate, non-punitive justification" for detaining him. (Pet. at 21-22.) In Ground 5, Petitioner argues that Respondents violated the APA by arresting and detaining him unlawfully. (Id. at 29-30.)

The only relief the Court could grant on these claims is release from custody. Because the Court is already granting that relief based on Grounds 2, 3, and 4 of the Petition, Grounds 1 and 5 are dismissed as moot.

### D. Ground 6, the Third Country Removal Claim, Is Dismissed as Unripe.

At present, there is no indication that ICE is attempting to remove Petitioner to any country besides Mexico. His removal proceedings are ongoing, and Petitioner does not allege any facts indicating that DHS could not remove him to Mexico, if the IJ ordered his removal there. Accordingly, Petitioner has not shown that the third country removal claim is ripe at this time. See, e.g., Zimran v. Noem, No. 25-cv-03143-JFW-KES, 2026 WL 161805, at *19, 2026 U.S. Dist. LEXIS 11527, at *50 (C.D. Cal. Jan. 14, 2026), R&R adopted, 2026 WL 167179, 2026 U.S. Dist. LEXIS 11291 (C.D. Cal. Jan. 21, 2026); Gevorgyan v. Noem, No. 25-cv-03408-SRM-ADS, 2026 WL 20902, at *5, 2026 U.S. Dist. LEXIS 1992, at *13-15 (C.D. Cal. Jan. 1, 2026); Hassanzadeh v. Warden, No. 25-cv-2113-DMG-MAA, 2025 WL 3306272, at *5 n.6, 2025 U.S. Dist. LEXIS 234890, at *14 n.6 (C.D. Cal. Nov. 25, 2025). Ground 6 is therefore dismissed.

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Grounds 2, 3, and 4 of the Petition are **granted**.
2. Grounds 1 and 5 of the Petition are dismissed as moot.
3. Ground 6 is dismissed as unripe.
4. Respondents shall **immediately release** William Guadalupe Villa Cambron (A# 214-148-268) from custody.

5. Within **three (3) days** of the date of this order, Respondents shall file a Notice of Release confirming that Petitioner has been released from custody.

6. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED: September 1, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE